Slip Op. 11-7

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| FYH BEARING UNITS USA, INC., | : | |
| Plaintiff, | : | Before: Jane A. Restani, Judge |
| v. | : | Court No. 09-00170 |
| UNITED STATES, | : | |
| Defendant. | : | |

## OPINION

[Judgment for defendant denying deemed liquidation relief.]

Dated: January 20, 2011

Baker & McKenzie, LLP (Kevin M. O'Brien, Stuart P. Seidel, and Kevin J. Sullivan) for the plaintiff.

Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Justin R. Miller and Claudia R. Burke); Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection; Deborah R. King, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

Restani, Judge: This matter is before the court on defendant the United States' (the "Government") motion for judgment on the pleadings and plaintiff FYH Bearing Units USA, Inc.'s ("FYH") motion to amend its complaint. The former is granted and the latter is denied as futile.[1]

---

[1] Defendant's motion to stay discovery is denied as moot.

## BACKGROUND

This action concerns thirty-nine entries of ball bearings and parts thereof imported by FYH from Japan and entered from May 1, 1994, through April 30, 1995. Compl. ¶¶ 3, 5, 7 (Docket No. 5). The manufacturer/exporter of the ball bearings was Nippon Pillow Block Sales Co., Ltd. ("NPB"). Compl. ¶ 7. The merchandise was subject to an antidumping duty order. Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof from Japan, 54 Fed. Reg. 20,904 (Dep't Commerce May 15, 1989) (antidumping duty order). Compl. ¶ 6. FYH paid estimated antidumping duties on the entries at the cash deposit rate of 7.42% ad valorem. Compl. ¶ 7.

The United States Department of Commerce ("Commerce") conducted an administrative review of the antidumping duty order for the period of review from May 1, 1994, through April 30, 1995 (the sixth administrative review of the antidumping duty order). Compl. ¶¶ 6–8. During this administrative review, Commerce determined a rate for ball bearings produced or exported by NPB. Id. Commerce published the final results of the administrative review on January 15, 1997, in which it determined the final antidumping duty rate for ball bearings exported/produced by NPB to be 45.83% ad valorem. Compl. ¶¶ 8–9; Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, and the United Kingdom, 62 Fed. Reg. 2,081 (Dep't Commerce Jan. 15, 1997) (final results).

Multiple parties, including FYH and NPB, sought judicial review of the final results for the sixth administrative review. Compl. ¶¶ 9–12. FYH and NPB's court action, Nippon Pillow Block Sales Co. and FYH Bearing Units USA, Inc. v. United States, Ct. No. 97-

00317 (CIT), was consolidated along with several others, under <u>NSK Ltd. and NSK Corp., et al. v. United States</u>, Consol. Ct. No. 97-00216 (CIT).  Compl. ¶¶ 9–12.  This consolidated action included an action brought by a domestic producer, the Torrington Company, <u>Torrington Co. v. United States</u>, Ct. No. 97-00310 (CIT).  Compl. ¶¶ 9–12.

The court enjoined the liquidation of all of FYH's entries pursuant to two separate preliminary injunction orders.  First, FYH's entries were subject to an injunction sought by FYH.  Compl. ¶ 9.  The injunction was granted in May 1997.  App. to FYH Bearing Units, Inc.'s Opp. to Mot. for J. on the Pleadings, Ex. A ("Pl. App.").  Second, FYH's entries were subject to a separate injunction sought by Torrington covering all the litigants and granted on April 28, 1997.  Compl. ¶ 10; Pl. App., Ex. E.  For both injunctions, the parties obtained the consent of the Government.

The court sustained Commerce's final results with respect to NPB and FYH and remanded the case for Commerce to consider certain issues unrelated to those two parties.  <u>See</u> <u>NSK Ltd. and NSK Corp. v. United States</u>, 170 F. Supp. 2d 1280 (CIT 2001).  On November 15, 2001, the court sustained Commerce's remand results and dismissed the consolidated action.  <u>See</u> <u>NSK Ltd. and NSK Corp. v. United States</u>, 25 CIT 1251 (2001); Compl. ¶ 14.  On December 5, 2001, the decision was published in the <u>Customs Bulletin and Decisions</u>, V. 35, No. 49, at 39.  Compl. ¶ 23; Pl. App., Ex. B.

Although NPB and FYH did not appeal the decision and ended litigation as to their entries, three other parties to the consolidated action did appeal.  Compl. ¶¶ 15–16, 23.  Specifically, NTN Bearings filed a notice of appeal on January 11, 2002.  Compl. ¶ 16; Pl. App., Ex. H.  The appeal was docketed as Appeal No. 02-1171.  Torrington filed a notice of appeal on

January 14, 2002. Compl. ¶ 16; Pl. App., Ex. H. The appeal was docketed as Appeal No. 02-1172. NSK Corp. and NSK Ltd. (collectively "NSK") filed a notice of appeal on January 15, 2002. Compl. ¶ 16; Pl. App., Ex. H. The appeal was docketed as Appeal No. 02-1173.

Each appellant, however, ultimately voluntarily dismissed its appeal. Specifically, in January 2004, Torrington filed a motion to sever and dismiss Appeal No. 02-1172 and NSK filed a motion to voluntarily dismiss Appeal No. 02-1173. The Court of Appeals for the Federal Circuit granted both parties' motions, severing and dismissing the two appeals in the same order issued on February 17, 2004. See NSK Ltd. and NSK Corp. v. United States, 89 F. App'x 254 (Fed. Cir. 2004). NTN then filed a motion to dismiss its severed appeal in Appeal No. 02-1171, which the court granted on July 15, 2004. See NSK Ltd. and NSK Corp. v. United States, 103 F. App'x 398 (Fed. Cir. 2004).

On May 13, 2005, Commerce sent an e-mail to specific Customs employees alerting them that injunction of liquidation had expired and liquidation instructions would be forthcoming. See Pl. App., Ex. K.[2]

On June 14, 2005, Commerce published notice of the amended final results of the sixth administrative review. Antifriction Bearings (Other than Tapered Roller Bearing) and Parts Thereof from Japan, 70 Fed. Reg. 34,447 (Dep't Commerce June 14, 2005) (amended final results). This notice advised that the decision in NSK Ltd., 25 CIT 1251 (2001), had become final and conclusive and recalculated NSK's margin pursuant to this Court's decision sustaining

---

[2] The e-mail appears to be of a non-public nature. Plaintiff does not allege in its proposed amended complaint that it was public, does not assert it needs discovery on this point, and appears to rest on a legal argument that non-public notice will suffice. See, infra, discussion.

Commerce's final remand determination.  Id.

On June 27, 2005, Commerce transmitted liquidation instructions for the sixth administrative review period (May 1, 1994 through April 30, 1995), including instructions for NPB and FYH, to U.S. Customs and Border Protection ("Customs") field offices in Message Number 5178204.  Customs liquidated FYH's entries on either November 18 or 25, 2005, at the final results rate of 45.83%.  Compl. ¶ 25.

FYH filed a protest and application for further review with Customs on January 9, 2006, claiming that the entries at issue were deemed liquidated at the lower cash deposit rate because Customs did not liquidate the entries within six months of November 15, 2001—the date on which the court issued its decision in NSK Ltd., 25 CIT 1251.  Compl. ¶ 26.

Customs denied the protest on December 3, 2008.  Compl. ¶ 27.  FYH commenced this action on April 24, 2009.  Discovery ensued.

In its original complaint, FYH alleged only one count: that Customs' liquidation of FYH's entries at the rate of 45.83% was erroneous because its entries were deemed liquidated under 19 U.S.C. § 1504(d) at the original cash deposit rate of 7.42% six months after Customs received notice of NSK Ltd., 25 CIT 1251.[3]  Compl. ¶ 29.  That claim is preserved in Count II of the proposed amended complaint.[4]  It is based on plaintiff's contention that the Torrington injunction of liquidation was ineffective because it allegedly was never served.

---

[3] Because this occurred so far in advance of liquidation, it does not matter if the FYH injunction ended by its terms when this decision resolved FYH's claims or when FYH's appeal time ran.

[4] New Count I has been abandoned. See Pl.'s Reply to Def.'s Opp. to Mot. for Leave to File Am. Comp. at 3 ("Pl. Reply").

Plaintiff asserts that when claims relating to its entries were dismissed by the court and this judgment was not appealed, the only injunction in effect expired, notice to Customs was given, and the six-month period in which liquidation at the higher rate was possible began to run. According to plaintiff, this starting date would be in either November or December 2001, the dates of judgment of dismissal in this court and publication in the Customs Bulletin, respectively.[5]

Count III, alternatively, relies on the May 13, 2005, e-mail as the beginning of the six-month period in which Customs must liquidate entries to avoid deemed liquidation at the entered rate, even if the Torrington injunction was effective. The Government for its part alleges, inter alia, that the Torrington injunction was effective and that the earliest public notice of injunction expiration, which could begin the running of the six-month period, was publication of the amended final results on June 14, 2005.

---

[5] In Travelers Indem. Co. v. United States, 580 F. Supp. 2d 1330, 1331–32 (CIT 2008), the court did not accept the Customs Bulletin publication of a decision of the Federal Circuit as notice to Customs of lifting of the injunction. The court need not resolve whether such publication of a decision of this court is in a different posture because the court concludes injunction had not lifted at that time.

**DISCUSSION**

Jurisdiction lies under 28 U.S.C. § 1581(a) (protest denial jurisdiction). The parties are in agreement as to the basic law governing the merits. 19 U.S.C. § 1504(d) provides:

> **(d) Removal of suspension**
> Except as provided in section 1675(a)(3) of this title, when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, unless liquidation is extended under subsection (b) of this section, within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry (other than an entry with respect to which liquidation has been extended under subsection (b) of this section) not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record or (in the case of a drawback entry or claim) at the drawback amount asserted by the drawback claimant.

19 U.S.C. § 1504(d). Case law has made clear that there are two conditions which start the six-month time period in which liquidation at a rate other than the entered rate may occur: 1) The suspension or injunction of liquidation must be removed and, 2) Customs must receive notice of the removal. See Fujitsu Gen. Am., Inc. v. United States, 283 F.3d 1364, 1377 (Fed. Cir. 2002); Int'l Trading Co. v. United States, 281 F.3d 1268, 1275 (Fed. Cir. 2002).

The concept of notice has been further refined to require that the notice be unambiguous and public.[6] See Cemex, S.A. v. United States, 384 F.3d 1314, 1321 (Fed Cir.

---

[6] While Cemex may have overstated the holding of Int'l Trading, in rejecting non-published e-mail notice, it clearly stated that the non-statutory requirements of unambiguity and public notice were binding. Cemex, 384 F.3d at 1321 n.5. The court defers to the Federal Circuit's interpretation of its own precedents. NEC Solutions (Am.) Inc. v. United States, 411 F.3d 1340, 1345 (Fed. Cir. 2005) (finding published e-mail notice without duty rates unambiguous) does not reject that view. Am. Int'l Chem., Inc.v. United States, 387 F. Supp. 2d 1258, 1269 (CIT 2005) (stating "neither statute nor case law requires" publication) is distinguishable from the case at hand because notice there was public. The court was not required to confront the issue head on.

2004) (citing Int'l Trading, 281 F.3d at 1275–76) ("Our case law further requires that, in addition to being unambiguous, the notice to Customs be public"). Assuming arguendo that the Federal Circuit had not made the public nature of the notice a requirement, the court would do so here. The sound policy advanced by the appellate court is to have a clean starting point for the six-month period. That is reflected in its preference for the ordinary legal notice provided by the Federal Register. See Int'l Trading, 281 F.3d at 1275 ("the date of [Federal Register] publication provides an unambiguous and public starting point for the six-month liquidation period"). Compare Fujitsu, 283 F.3d at 1380 (Federal Register publication is notice to Customs), with Cemex, 384 F.3d at 1321 (non-published e-mail is not notice to Customs).

    With these precedents in mind, the court concludes that the May 13, 2005, e-mail, upon which plaintiff relies in proposed Count III, did not trigger the six-month liquidation period. As indicated, supra, in note 2, there is no allegation that what appears on its face to be a non-public e-mail was made public in May 2005. Plaintiff's argument, rather, is that publication is not required. See Pl. Reply at 8. The court disagrees, as indicated.

    Thus, the crux of this case is the status of the Torrington injunction. If it was effective, it expired by its terms when litigation conclusively ended and notice of that event was published, at the earliest June 14, 2005. There is no evidence of or assertion that there was public notice to Customs prior to that date that the litigation covered by the Torrington injunction was concluded and injunction of liquidation had ended. Liquidations on November 25, 2005, are timely if the Torrington injunction was effective.

    While the court's docket does not indicate that the Torrington injunction was served on Customs, somehow Customs knew of it because it acted as if the injunction was in

place by sometime later instructing the ports that entries were not to liquidate. The instructions referred to the April 28, 1997, injunction. Compl.¶ 11. The injunction plaintiff, not Torrington, obtained, which likely dissolved without effect here, was issued in May, not April.

Thus, despite the search some dozen years later which revealed no proof of service, on Customs or Commerce, the court cannot conclude that there was no service. Assuming, arguendo, that service was not accomplished, the result would be the same, as will be discussed. Thus, the court need not resolve the factual issue or decide if plaintiff's complaint is adequate on this point.

Through more than a decade of litigation, all involved parties acted as if an injunction of liquidation were in place. Customs and the parties acted as they should have by not liquidating entries and continuing to litigate from the moment the injunction was signed.

The Torrington injunction was sought or consented to by the parties. Thus, it is the same type of injunction as was at issue in Agro Dutch Indus. Ltd. v. United States, 589 F.3d 1187 (Fed. Cir. 2009). In that case, the court upheld an ex post facto amendment of a consent injunction of liquidation deleting a five-day waiting period. Id. at 1194. Entries had liquidated during the five-day period despite the desires of all concerned to prevent liquidation, but this court amended its injunction to make it effective without the waiting period and thereby rendered the waiting period liquidations ineffective.

Just as the five-day period could be deleted in Agro Dutch in the interest of justice and the intentions of the parties, as well as those of the court, so too requirements of a particular form of, or persons to receive, service may be deleted after the fact to fulfill the same

interests and intentions.[7]

The purpose of these types of injunctions is to preserve remedies by delaying unchallengeable liquidations, and to provide a way to correct inadvertent liquidations without

---

[7] The service provision at issue provides as follows:

> [Liquidation is enjoined of covered entries that] remain unliquidated as of 5 o'clock p.m. on the first business day after the day on which copies of this ORDER are personally served by plaintiff, The Torrington Company, on the following individuals and received by them or their delegates:
>
> Holly Kuga, Director
> Office of Antidumping Compliance
> International Trade Administration
> United States Department of Commerce
> 14th Street and Constitution Avenue, N.W.
> Washington, DC  20230
>
> Hon. George J. Weise
> Commissioner of Customs
> Attn:   Elizabeth Anderson, Esq.
>            Chief Counsel
>            United States Customs Service
>            Room 3305
>            1301 Constitution Avenue, N.W.
>            Washington, DC
>
> Velta A. Melnbrencis, Esq.
> United States Department of Justice
> Civil Division
> Commercial Litigation Branch
> Room 11048
> 1100 L Street, N.W.
> Washington, DC 20530

Pl. App., Ex. E. at 2–3.

Court No. 09-00170                                                                                          Page 11

excessive litigation.[8] Further, contempt is not an issue if government officials liquidate without notice of the injunction, or, liquidate inadvertently, even with notice. Thus, waiting periods and particular forms of service or service recipients are essentially unimportant.

The court does not find Ames True Temper v. United States, 700 F. Supp. 2d 1352 (CIT 2010) helpful here. While ostensibly that opinion limited Agro Dutch to the five-day waiting period provision, the court leaves to the Federal Circuit any such limitation of Agro Dutch. Of course, Ames is not binding, and it is distinguishable. Ames does not discuss if or how Ames came to rely on the injunction at issue there. Furthermore, prior to Agro Dutch and under another jurisdictional basis, Ames' claim had been rejected. See Shandong Huarong Mach. Co. v. United States, Slip Op. 08-135, 2008 WL 5159774, *4–5 (CIT Dec. 10, 2008).

Rather, a case more on point is Clearon Corp. v. United States, 717 F. Supp. 2d 1366 (CIT 2010)[9] in which, post-Agro Dutch, the court deleted the specific service requirements of the liquidation injunction at issue there in order to effectuate the intentions of the parties. Id.

---

[8] Deemed liquidation under 19 U.S.C. § 1504(d) fits poorly with international trade, as opposed to Customs classification and valuation, cases. Trade cases often take many years to litigate in various fora and are not decided by Customs. 19 U.S.C. § 1504(d) was intended to hurry Customs along so that importers would have finality. United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550, 1560 (Fed. Cir. 1997). Injunctions of liquidation are virtually automatic in administrative review challenges such as that at issue here. Parties should not have to guess whether they litigate to no effect. Until statutory suspension of liquidation is extended to court action or deemed liquidation clearly is made inapplicable to trade cases, it behooves the court to recognize these injunctions to the maximum extent permissible, and it also behooves the parties to cease making consent injunctions dependent on particular forms of service or recipients thereof, and waiting periods, if indeed such provisions mean anything after Agro Dutch. Service requirements need not purport to condition the effective date of the injunction.

[9] The court refers the reader to this case for a full discussion of the statutory scheme and background matter.

at 1373.  Similarly, in order to fulfill the intentions of the parties and to preserve the efforts of all concerned, including the courts, if the prohibition of liquidation were currently in effect, the court would amend the Torrington injunction to make its status express, i.e., that it was effective upon signing.

## CONCLUSION

Plaintiff's motion for leave to amend the complaint is denied.  Defendant's motion for judgment on the pleadings is granted.

                                                    /s/ Jane A. Restani
                                                      Jane A. Restani
                                                          Judge

Dated: This 20th day of January, 2011.
New York, New York.

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| FYH BEARING UNITS USA, INC., | : | |
| Plaintiff, | : | |
| v. | : | Court No. 09-00170 |
| UNITED STATES, | : | |
| Defendant. | : | |

## JUDGMENT

Defendant's motion for judgment on the pleadings is granted, as plaintiff's complaint fails as a matter of law. This action is hereby dismissed.

                                                  /s/ Jane A. Restani
                                                    Jane A. Restani
                                                          Judge

Dated: This 20th day of January, 2011.
New York, New York.